Kamran Shahabi (State Bar No. 276194)
ks@valiantlaw.com
Paul Nolan (State Bar No. 192267)
pjn@valiantlaw.com
VALIANT LAW
800 Ferrari Lane, Suite 100
Ontario, California 91764
Telephone: 909.677.2270
Facsimile: 909.677.2290

Attorneys for Plaintiff LINDSEY MACK

Alison L. Lynch (SBN 240346)
Sarah Raoof (SBN 329260)
JACKON LEWIS P.C.
200 Spectrum Center Drive, Suite 500
Irvine, CA 92618
Telephone:  (949) 885-1360
Facsimile:  (949) 885-1380
Email:         alison.lynch@jacksonlewis.com
                   Sarah.raoof@jacksonlewis.com

Attorneys for Defendant WESTER GOVERNORS UNIVERSITY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDSEY MACK , an individual<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WESTERN GOVERNORS UNIVERSITY, a Utah Nonprofit Corporation, and DOES 1 through 20 inclusive,<br><br>　　　　Defendants. | Case No.: **3:23-cv-01842-RBM-MSB**<br><br>Hon. Michael S. Berg<br><br>[San Diego Superior Court Case No. 37-2023-00037783-CU-OE-CTL]<br><br>**JOINT RULE 26(F) REPORT**<br><br>Complaint filed: August 21, 2023<br>Removal Date: October 6, 2023<br>Trial Date: None Set |

## I. JOINT RULE 26(f) REPORT

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Plaintiff LINDSEY MACK ("Plaintiff" or Mack"), on the one hand, and Defendant WESTERN GOVERNORS UNIVERSITY ("Defendant" or "WGU"); on the other hand (hereinafter referred to collectively as the "Parties"), submit this Joint Rule 26(f) Report. Prior to submitting this report, counsel met and conferred and discussed the items required under the rules, and this report is submitted based on those discussions.

## II. STATEMENT OF THE CASE

### A. Plaintiff's Position

This matter involves Plaintiff's sex discrimination, retaliation, failure to indemnify necessary expenditures and wrongful termination claims against her former employer, WGU. In or around November 2017, Plaintiff began her employment with WGU, a private online educational university, as an evaluator. At all relevant times, Plaintiff was an excellent employee, performed her job duties above satisfaction, and did not receive any disciplinary or corrective actions prior to WGU's discriminatory and retaliatory scheme to terminate Plaintiff's employment.

In or around August 2021, Plaintiff began advising WGU's Human Resources department that WGU failed to properly compensate Plaintiff for such expenses. Unfortunately, Plaintiff's complaints continually fell on deaf ears. It wasn't until approximately one year later – in or around August 2022, while Plaintiff was out on maternity leave, that WGU finally investigated Plaintiff's complaints and requests for reimbursement of her expenses. Unfortunately, and in conscious disregard for her rights, WGO has failed to fully reimburse Plaintiff for all necessary expenses she has incurred to date.

Throughout her history of employment with WGU, Plaintiff was also the victim of a hostile and harassing work environment in which she was improperly

singled out for disciplinary action without any basis whatsoever in a concerted effort by WGU to terminate anyone it considered to be problematic. These unfounded efforts to discipline Plaintiff were simply acts of retaliation carried out with the intent to constructively terminate Plaintiff.

Further, Plaintiff experienced discrimination and retaliation as a direct result of her notice of pregnancy and subsequent maternity leave. Notably, in or around March 2022, approximately one month prior to Plaintiff's scheduled maternity leave in April 2022, WGU announced that they would be restructuring and creating new management positions. Plaintiff, meeting all the posted position requirements and seeking to continue her career growth with WGU, submitted her application for one of the new management positions. Unfortunately, Kirk Welter (hereinafter, "WELTER"), the Vice President over WGU's restructuring and the hiring manager, was informed of Plaintiff's pregnancy status and maternity leave during the application process. As a direct result, Plaintiff was discriminated against by being overlooked for the position. Worse still, Plaintiff later discovered that the position was presented to an applicant who was much less qualified than her and who failed to meet the posted position requirements – demonstrating WGU's animus against Plaintiff based upon her pending pregnancy and maternity leave and continued retaliation

Adding insult to injury, while out on maternity leave, Plaintiff was once again overlooked for promotional opportunities due to her pregnancy and maternity leave status. In or around April 2022, another position became available, this position was for Senior Evaluator. Notably, this position is given based on tenure. Plaintiff, having worked for WGU for approximately five years, met the tenure requirement and would have been a top candidate for this position. Unfortunately, WGU once again displayed their discriminatory animus by failing to include Plaintiff's information in the application process. When she confronted WGU about this, she

was informed that her name was not included on account of her pregnancy and related leave.

Thereafter, on or about September 22, 2022, Plaintiff returned from maternity leave. Shelly Sinclair (hereinafter "SINCLAIR"), Plaintiff's new supervisor, directed her to access the WGU internet site, SharePoint, which houses documents such as recordings of team meetings, training documents, and team resources in order to familiarize herself after coming back from leave. To Plaintiff's utter shock and surprise, she observed that personal and private information related to herself and her colleagues was available for anyone to access on the SharePoint site. Specifically, pay rates of new hires, addresses and phone numbers of all team members, performance data, individualized performance plans and corrective action documents.

Plaintiff recognized this open access and improper availability of private information as a violation of privacy and immediately advised WGU's legal team of the situation as she did not trust her supervisor to handle this issue properly. During this process, Plaintiff stressed that WGU employees conduct an annual Family Educational Rights and Privacy Act ("FERPA") training in order to prevent breaches such as the one PLAINTIFF discovered through the SharePoint site. Plaintiff further requested that WGU immediately inform all members of this site that their personal information was being shared without their knowledge or consent.

Shockingly, four days later, on or about September 26, 2022, Plaintiff received an email from WGU's Human Resources advising her that "effective tomorrow you will no longer be employed at the university." Plaintiff reached out and requested a reason for her termination, however she never received a response. Moreover, Plaintiff is informed and believes WGU wrongfully terminated her employment in retaliation for her discovery and complaints related to WGU's

breach of her and her colleagues' privacy rights.

As a result of Defendant's conduct, Plaintiff has suffered both financially and emotionally because of the foregoing and will seek damages according to proof at the time of trial based on the instant lawsuit filed on August 21, 2023.

### B. Defendant's Position

Plaintiff was employed as an Evaluator for WGU. She applied for a promotion in approximately March 2022. She was not selected. After not receiving the promotion, Mack, like a few others, accepted WGU's invitation to discuss the selection process. As a result, Vice President Kirk Welter met with Mack to discuss the decision, which in her case was based in part on deficiencies with her interview responses.

Plaintiff started her maternity leave in April 2022. While on leave, she reached out to management about who her supervisor would be when she returned. Plaintiff had apparently heard rumors that WGU planned to have Mack report to a different supervisor, Shelly Sinclair, when she returned. Those rumors were, in fact, accurate, as the department where Mack worked was undergoing a larger reorganization that led to a majority of Evaluators reporting to new direct supervisors. In other words, Mack's return to a new supervisor would not have been unique to her. Still, Mack became exceedingly belligerent about these plans and claimed that WGU had promised her that her personal reporting structure would not change during her leave. In fact, nobody had made such a promise to her. Even so, several managers and Human Resources employees conferred with Mack about her concerns. Through these discussions, WGU management was troubled by the rude and aggressive way in which Mack raised her questions, at times crossing the line between productive inquiry and disrespectful attacks on Sinclair and others.

Mack returned from leave in late September 2022. Sinclair welcomed Mack back with a cordial email on September 20, 2022, that provided expectations for her

return. That email included many training tasks assignments, which was typical for employees returning from long-term leaves. Evaluators are expected to keep up to date on internal training during their working hours, in part so that students' work product evaluations are both accurate and consistent across evaluators. As Sinclair explained in the email, the purpose was to provide a "return-to-work plan which includes getting you up to speed on things that you have missed and refreshing you on the courses/tasks you are assigned."

Unfortunately, Mack provided an unproductive response. Mack claimed she could not complete tasks without more information and that the training plan was unrealistic. She also attacked Sinclair by asserting that "grammatical errors and lack of sentence structure impedes the clarity of the information." Mack even claimed that it was inappropriate to send her the email. Even though Mack's aggressive response seemed markedly disproportionate to Sinclair's benign email, Sinclair merely replied that an email welcome letter is common procedure for new hires and returning evaluators.

Two days later, on September 22, 2022, Mack met with Sinclair, Sinclair's direct supervisor Senior Manager Courtney Munday, and Senior People & Talent Business Partner, Susan Chalmers. Although WGU's managers expected a professional discussion about the expectations in the email, Mack immediately sidetracked the meeting by attacking Sinclair's integrity. Mack claimed that Sinclair was a "documenting queen" who planned to issue her discipline if she flouted expectations. Again, Mack acted unacceptably belligerent towards Sinclair and Chalmers during this meeting.

Later that day, Mack emailed WGU's President Scott Pulsipher, WGU's VP of People & Talent, Sara Reed, and four members of WGU's in-house legal department to report a purported privacy violation on WGU's I.T. system. In the email she stated that she had been directed by her supervisor (i.e., Sinclair) to a

SharePoint site for her Team. She then claimed that Sinclair had used that Team site to store "private documents" that Mack had apparently accessed, including pay rates for new hires, contact information for team members, performance data for team members, and corrective action documents for some employees. Mack claimed to be concerned about this information being available on the site. Mack also asserted that she was reporting it to the legal team because she believed it to be a "FERPA violation."

About one hour after Mack's email that Thursday morning, in-house counsel Sarah Hook replied to Mack's email and thanked her for bringing it to WGU's attention. Hook conveyed that she would be reaching out to People & Talent to address. WGU was at first perplexed by Mack's allegation of a FERPA violation. The Family Educational Rights and Privacy Act ("FERPA") is a federal law that generally protects the privacy of student education records. By its terms that law does not apply to non-student employee information, the only documentation that Mack addressed in her email. That said, WGU took Mack's initial email seriously. Even if maintaining personnel information on a computer system accessible to coworkers may not necessarily violate the law, best practice would be to restrict nonsupervisory employee access to such documents.

WGU's investigation determined that Mack's complaint was false. Moreover, Mack herself had engaged in serious misconduct related to this purported privacy issue. That investigation showed the following:

- Contrary to Mack's contention, the Team site to which Sinclair had directed her contained no employee performance documentation.
- In fact, all the information Mack purportedly accessed was located on a *different* SharePoint that departmental management, including Sinclair and Bridgeman, used.

In other words, Mack claimed to be concerned about employee information located on the SharePoint "MSCIN Evaluation." (i.e., the SharePoint for Evaluation Team employees in her department). Yet that SharePoint contained no such documents. Rather, those documents were located on the SharePoint for "MSCIN People Leaders" (i.e., the SharePoint for departmental supervisors. That SharePoint, as would be appropriate, had team member information, including contact information and prior evaluations.

Thereafter, Mack compounded the issue by emailing team members about a purported (and non-existent) data breach. What's more, further investigation showed that she had downloaded files should not have. As a result, her employment was lawfully terminated. Neither pregnancy nor her recent maternity leave motivated the termination decision in any way.

### III. SUBJECT MATTER JURISDICTION

The Parties agree that this Court has subject matter jurisdiction over the Parties and this action pursuant to 28 U.S.C. § 1441(b) and 28 U.S.C. § 1332 because there is complete diversity of the Parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

### IV. LEGAL CLAIMS

**A.** **Plaintiff**: Plaintiff alleges in her complaint that Defendants subjected her to the foregoing: 1. Sex Discrimination in Violation of Government Code § 12940; 2. Retaliation in Violation of Government Code § 12940; 3. Whistleblower Retaliation in Violation of Labor Code § 1102.5; 4. Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of FEHA 5. Wrongful Termination in Violation of Public Policy; 6. Failure to Indemnify Necessary Expenditures in Violation of Labor Code § 2802; and 7. Waiting Time Penalties Pursuant to Labor Code §§ 201 and 203.

**B.** **Defendant**: Defendant contends that the following summarizes the

-8-

JOINT RULE 26(F) REPORT

disputes in this case : (1) Whether the decision to terminate Plaintiff's employment was substantially motivated by her sex ; (2) Whether Defendant failed to prevent unlawful discrimination, retaliation and harassment against Plaintiff ; (3) Whether Defendant wrongfully terminated Plaintiff in violation of public policy ; (4) Whether Defendant retaliated against Plaintiff in violation of Government Code § 12940 ; (5) Whether Defendant unlawfully failed to indemnify Plaintiff of necessary expenditures in violation of Labor Code §2802 ; (6) Whether Defendant retaliated against Plaintiff in violation of Labor Code § 1102.5 ; (7) Whether Plaintiff has properly mitigated her damages ; and (7) Whether Defendant failed to pay Plaintiff all of her earned wages at the time she was discharged.

## V. PARTIES, EVIDENCE, ETC.

The Parties are Plaintiff LINDSEY MACK and Defendant WESTERN GOVERNORS UNIVERSITY

Plaintiff's key witnesses may include, but are not limited to: Plaintiff Lindsey Mack; prior WGU employees Karyn Irwin, Chontel Bridgeman, and Samantha Hayes; WGU evaluator supervisor Shelly Sinclair; WGU Human Resources manager Teneal Taylor; WGU VP Kirk Welter; WGU employees Karry McShea and Sara Reed.

Defendant's key witnesses may include, but are not limited to: Plaintiff; Shelly Sinclair; WGU Senior People and Talent Manager, Teneal Taylor; WGU Director of General Counsel, Sarah Hook; WGU VP Kirk Welter; Senior Manager Courtney Munday; Senior People & Talent Business Partner, Susan Chalmers, Lori Housley, Jesse Gates, Diane Elliott, Tamala Wells, Rosemary Wells, and Teressa Voltz. Defendant reserves the right to supplement this list as necessary once discovery commences.

## VI. DAMAGES

A. <u>Plaintiff</u>: Plaintiff is unaware of the current extent of her damages, but

currently alleges that she has suffered compensatory, economic, and special damages in excess of $75,000 in the form of lost wages, emotional distress, and punitive damages. Plaintiff further contends that she is entitled to reasonable attorney's fees pursuant to his Whistleblower Retaliation and Wrongful Termination claims. Finally, Plaintiff's damages will be supplemented according to proof and expert testimony through the litigation.

B.  <u>Defendant</u>: Defendant denies that Plaintiff has suffered any damages or that is liable to Plaintiff under any legal theory.

## VII. INSURANCE

The Parties are currently unaware of any insurance coverage available to Defendants' that would cover the claims in this action, including coverage for attorneys' fees and any reservation of rights to disclaim coverage. Defendant contends there is no insurance coverage for this case.

## VIII. MOTIONS

A.  Plaintiff: Plaintiff does not anticipate the filing of motions seeking to add other parties or claims, amend pleadings, transfer venue, or dismissal based on lack of jurisdiction. Furthermore, at this time, Plaintiff has not determined whether there are any other issues that may be determined by motion practice.

B.  Defendant: Defendant may file a motion for summary judgment or in the alternative, for summary adjudication.

## IX. MANUAL FOR COMPLEX LITIGATION

At this time, the Parties do not believe that any portion of the Manual for Complex Litigation should be utilized in managing the matter.

## X. STATUS OF DISCOVERY

Plaintiff served written discovery upon WGU in the state Court action. Plaintiff has agreed to withdraw that discovery and to reissue it according to the Federal Rules of Civil Procedure.  Plaintiff has requested and received a copy of her

employee file from Defendant. Defendant plans to serve written discovery within the next 30 days.

## XI. DISCOVERY PLAN

A. <u>Initial Disclosures:</u> The Parties agree that no changes should be made in the form or requirement for disclosures under Rule 26(a). The Parties agree to exchange Initial Disclosures by November 5, 2023.

B. <u>Anticipated Subjects of Discovery:</u>

The Parties anticipate Discovery regarding the following issues:

a. Plaintiff's Anticipated Discovery:

- Plaintiff anticipates conducting discovery including interrogatories, requests for admissions, and requests for production of documents.
- Plaintiff anticipates conducting the depositions of Defendant's persons most knowledgeable, and possibly other witnesses as the case develops.

b. Defendant's Anticipated Discovery:

- Defendant anticipates conducting discovery including interrogatories, requests for production of documents, and special interrogatories
- Defendant anticipates conducting the deposition of Plaintiff, and possibly other witnesses as the case develops.

The Parties agree that discovery should not be conducted in phases or otherwise be limited at this time.

c. <u>Electronically Stored Information:</u> The Parties contemplate limited discovery of electronically-stored information ("ESI"). The Parties will produce ESI in a useable format and at this time contemplate producing documents in searchable hard-copy format via secure file transfer, while preserving any available native and

.pst files. The Parties agree to work together to resolve any disputes regarding the production format of ESI. The Parties will review all ESI and paper documents for privilege prior to production. The Parties have discussed discovery of electronically stored information such as potentially relevant email communications. Counsels are conferring with their respective clients as to the scope of electronic discovery and the most effective and efficient ways of obtaining same. The Parties do not anticipate any disputes or concerns relating to the production of these documents. The Parties have agreed to cooperate with each other regarding the production of these documents as the need arises. If private, confidential, or proprietary information is at issue, the Parties intend to meet and confer in an effort to either limit the scope of discovery requests and/or enter into a protective order.

  d. <u>Privilege:</u> The Parties do not currently anticipate any issues related to privilege. All documents withheld for privilege or documents redacted for privilege will be identified on a privilege log. The Parties recognize that privileged material may be inadvertently produced, and the Parties agree that privileged material that is inadvertently produced will be handled in accordance with Fed. R. Civ. P. 26(b)(5).

  e. <u>Changes to Discovery Procedures:</u>  The Parties agree that no changes should be made in the limitations on discovery imposed under applicable rules.

  f. <u>Other Orders:</u>  The Parties do not request any other orders from the Court under Federal Rule of Civil Procedure Rule 26(c) or under Rule 16(b) and (c) at this time. Further, the Parties reserve their rights to propose orders as deemed necessary in the course of litigation.

**XII.  DISCOVERY CUT-OFF**

The Parties propose to complete all fact discovery, including resolution of all discovery motions, by June 7, 2024.

**XIII. EXPERT DISCOVERY**

The Parties propose that expert designations and deadlines occur as set forth

in F.R. Civ. P 26(a)(2) and according to the timetable set forth in Section 21.

## XIV. DISPOSITIVE MOTIONS

Both Parties will bring motions *in limine*, but because this case is in its infancy, neither Party can anticipate grounds for such motions at this time.

## XV. PARTIES' SETTLEMENT/ALTERNATIVE DISPUTE RESOLUTION (ADR)

The Parties will be participating in a Court ordered Early Neutral Evaluation ("ENE") with the Honorable Judge Michael Berg on November 8, 2023. The Parties will be prepared to engage in meaningful settlement negotiations during the ENE.

## XVI. TRIAL ESTIMATE

The Parties anticipate that trial will last approximately 3 to 7 days. Plaintiff requests a jury trial. The Parties propose a trial date of September 30, 2024.

The Parties have not completed their investigation, but Plaintiff anticipates calling 6-8 witnesses and each Defendant estimates calling 6-8 witnesses.

## XVII. TRIAL COUNSEL

A. Plaintiff's Counsel – Raymond Babaian, Kamran Shahabi, and Paul Nolan of Valiant Law.

B. Defendant's Counsel – Alison Lynch and Sarah Raoof of Jackson Lewis P.C.

## XVIII. INDEPENDENT EXPERT OR MASTER

The Parties agree that this is not a case where the Court should consider appointing a master pursuant to Rule 53 or an independent scientific expert.

## XIX. OTHER ISSUES

The Parties do not have any other issues for the consideration of the Court at this time.

/ / /

## XX. CONSENT TO PROCEED BEFORE MAGISTRATE JUDGE

The Parties have discussed whether they consent to have a Magistrate Judge of this Court conduct any and all necessary proceedings and order the entry of judgment in this matter pursuant to 28 U.S.C. § 636(c). The Parties do consent to the assignment of this matter to a Magistrate Judge.

## XXI. PROPOSED JOINT SCHEDULE

The Parties propose the following discovery, motion, and trial schedule:

| EVENT | JOINT REQUESTED DATE |
|---|---|
| Close Fact Discovery | March 4, 2024 |
| Initial Expert Designations and Disclosures Due | April 4, 2024 |
| Rebuttal Expert Designations Due | June 7, 2024 |
| Deadline to File Rule 56 and *Daubert* Motions | July 8, 2024 |
| Meeting before Final Pretrial Conference | September 9, 2024 |
| Final Pre-Trial Conference Documents Due | September 16, 2024 |
| Final Pre-Trial Conference | September 23, 2024 |
| Trial | September 30, 2024 |

DATED: November 1, 2023                **VALIANT LAW**

By: /s/ Paul Nolan
KAMRAN SHAHABI
PAUL NOLAN
Attorneys for Plaintiff,
CONRAD LEPE

-14-
JOINT RULE 26(F) REPORT

DATED: November 1, 2023 **JACKSON LEWIS P.C.**

By: _____
ALISON L. LYNCH
SARAH RAOOF
Attorney for Defendant, WESTERN GOVERNORS UNIVERSITY

4888-1076-1098, v. 2

# PROOF OF SERVICE

I am employed in the County of San Bernardino, State of California. I am over the age of 18 and not a party to the within action; my business address is 800 Ferrari Lane, Suite 100, Ontario, CA 91764.

On November 1, 2023, I served the foregoing document(s) described as **JOINT RULE 26(F) REPORT** on all the interested parties in this action at the address listed below, as follows:

| Sarah Raoof, Esq.<br>**JACKSON LEWIS P.C.**<br>200 Spectrum Center Drive, Suite 500<br>Irvine, CA 92618<br>Tel: (949) 885-1367<br>**Attorney for Defendant WESTERN GOVERNORS' UNIVERSITY** | Sarah.Raoof@jacksonlewis.com<br>Alison.Lynch@jacksonlewis.com<br>Alison.Reid@Jacksonlewis.com |
|---|---|

(__)   **MAIL (FRCP 5(b)(1)(C))**: By placing a true copy (copies) thereof enclosed in a sealed envelope(s), addressed as above, and by placing said sealed envelope(s) for collection and mailing on the date following ordinary business practices. I am "readily familiar" with the business' practices for collection and processing of correspondence for mailing the U.S. Postal Service. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Bernardino County, California, in the ordinary course of business.

(__)   **ELECTRONIC MAIL:** I served the above document(s) by electronic mail in the United States during normal business hours by causing the within document to be transmitted to the attorney of records for the parties herein at the email address(es) as indicated above.  The electronic service was in compliance with CRC Rule 2.251 and the transmission was reported as completed and without error. I am readily familiar with Valiant Law business practice of electronic service.

(__) **EXPRESS MAIL**: I caused said document(s) to be placed in an Express Mail Overnight Envelope and deposited in an express Mail DropBox to be delivered the following business day pursuant to FRCP 5(b)(1)(F)).

(_x_) **ECF /EMAIL**: By electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them via email as indicated above.

(__) **PERSONAL SERVICE (FRCP 5(b)(1)(B)(i))**: I caused said documents to be

1 | served by personally deliver them to the person(s) at the address(es) noted above.

2

3 | I declare under penalty under the laws of the State of California and the United States that the foregoing above is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

4

5 | Executed on November 1, 2023, at Ontario, California.

_____
SAMIRA MORAZAN